**BOCA INVESTERINGS PARTNERSHIP, et al., Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**No. CIV. A. 97–0602(PLF).**

United States District Court, District of Columbia.

Dec. 22, 2000.

Melvin White, Diane L. Cafritz, Christopher Kliefoth, William L. Goldman, Karla Palmer, McDermott Will & Emery, Washington, DC, for Plaintiffs.

Darren D. Farfante, Michael J. Salem, Samuel Alvin Mitchell, Thomas P. Holderness, U.S. Dept. of Justice, Washington, DC, Richard L. Gilman, Papermaster & Weltmann, Landover, MD, for Defendant.

## OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on plaintiffs' motion *in limine* to exclude defendant's Exhibits 91 and 92, which now is fully briefed. Upon consideration of plaintiffs' motion, the opposition, replies, surreplies and supplemental submissions, the Court finds that Exhibits 91 and 92 are not admissible under the business records exception to the hearsay rule, the residual exception to the hearsay rule, or as statements of co-conspirators. It therefore grants plaintiffs' motion.

Exhibit 92, entitled "CREDIT PROPOSAL" and dated April 5, 1990, describes a transaction involving ABN Bank and plaintiff American Home Products ("AHP"). At the conclusion of the proposal, the names Hans den Baas, Susan C. Casper and Susan L. Pearson, all of ABN Bank New York, are typed, but neither their names nor the names of anyone else are manually signed on the document. Exhibit 91, an internal ABN Bank memorandum from Mr. den Baas and Ms. Casper to G. Stroomer of ABN Bank's Amsterdam branch, elaborates on the transaction by providing a "calendar of events" that summarizes the mechanics of the proposed transaction. It, too, is dated April 5, 1990, and also is unsigned.

Defendant asserts that the two exhibits, taken together, describe and explain the transaction around which this case revolves. Statements made within the exhibits, defendant contends, speak to the alleged illegitimacy of the transaction and thus go to the heart of defendant's theory of its case. In their motion *in limine*, plaintiffs suggest that the exhibits are inadmissible at trial because they contain hearsay—statements being offered for the truth of the matters asserted that are made by individuals who have not testified, and will not testify at trial. *See* Rule 801(c), Fed.R.Evid. In response, defendant argues that the statements contained in Exhibits 91 and 92 are admissible under

any one of three theories: (1) under Rule 803(6) of the Federal Rules of Evidence, the business records exception to the hearsay rule; (2) under Rule 807, the residual exception to the hearsay rule; or (3) as statements of a co-conspirator made during the course of and in furtherance of the conspiracy, under Rule 801(d)(2)(E). The Court finds that Exhibits 91 and 92 are not admissible under any of these theories.

### A. Business Records Exception

Hearsay evidence is not admissible except as specifically permitted by rule. *See* Rule 802, Fed.R.Evid. If a court allows a party at trial to offer an out-of-court statement of a non-trial witness to prove the truth of the matters asserted therein, as the government asks the Court to do here, it deprives the opposing party of the opportunity to cross-examine the person who made that statement regarding its truthfulness. *See generally* 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 802.02[2] (2000). When analyzing the underpinnings of the rule excluding hearsay, courts have noted that "[c]ross-examination may be the greatest legal engine ever invented for the discovery of truth, but it is not of much use if there is no one to whom it can be applied." *United States v. Evans,* 216 F.3d 80, 85 (D.C.Cir.2000) (internal quotations omitted) (quoting *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). It is primarily for this reason that first the common law and then those who drafted the Federal Rules of Evidence permitted hearsay in the most limited of circumstances, and then usually only where the out-of-court statement has circumstantial guarantees of trustworthiness and reliability.

■ Rule 803(6) of the Federal Rules of Evidence, the business records exception,

provides an exception to the rule excluding hearsay for records of regularly conducted activity. The theory is that if a statement is recorded in the ordinary course of a regularly conducted activity, and if it is the regular practice of the business to record such a statement, there is a sufficiently high degree of trustworthiness inherent in the document to ensure its truthfulness, making cross-examination of the person who prepared the document less necessary. Under the Rule, a "memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses" is covered by the business records exception if it was "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation." Rule 803(6), Fed. R.Evid. The Rule further states that this must be "shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." [1]

Offering the deposition testimony of Parker Douglas, a custodian of records for ABN Bank, and Hans den Baas, an otherwise "qualified witness" of ABN Bank, the government asserts that Exhibits 91 and 92 are admissible under the business records exception because they meet all the requirements of Rule 803(6). With respect to Exhibit 92, the credit proposal, the government contends that it is a "memorandum, report, record, or data compilation ... of acts, events, conditions, opinion, or diagnoses," [2] that was made "at or near the time" of the occurrence,[3] was "kept in the

---

1. Rule 803(6) was amended effective December 1, 2000, to permit self-authentication of certain records without the need for a custodian. *See* Rule 803(6), Fed.R.Evid., Advisory Committee Notes, 2000 Amendment. The amendment is not relevant to the documents at issue in this case.

2. 1st den Baas Dep. at 62–63; 2nd den Baas Dep. at 26–30; ABN/Douglas Dep. at 48.

3. 1st den Baas Dep. at 63; ABN/Douglas Dep. at 50.

course of a regularly conducted business activity,"[4] and it was "the regular practice of that business activity to make the credit proposal".[5] The government similarly asserts that Exhibit 91, the internal ABN Bank memorandum that apparently is an addendum to the credit proposal, is a "memorandum, report, record, or data compilation ... of acts, events, conditions, opinion, or diagnoses,"[6] that was made "at or near the time" of the occurrence,[7] was "kept in the course of a regularly conducted business activity,"[8] and it was "the regular practice of that business activity to make" the memorandum.[9]

Although the testimony of Mr. Douglas and Mr. den Baas cited by the government is adequate to satisfy several elements of Rule 803(6), it does not satisfy what is arguably the most important element: that the records themselves and the statements therein were made "by, or from information transmitted by, a person with knowledge." Plaintiffs suggest that the cited deposition testimony does little more than narrow the possible authors of the documents to one (or more) of three individuals: Mr. den Baas, Ms. Casper and/or Ms. Pearson. More importantly, plaintiffs urge, the deposition testimony completely fails to identify the source or sources of the most important information provided to one or more of those three individuals and included in the two documents: the credit proposal's narrative summary of the transaction and the memorandum's narrative calendar of events to be followed to complete the transaction. Plaintiffs suggest that even if the narrowing of the possible authors to one of three individuals is sufficient to satisfy the requirement that

the exhibits' proponent identify the "person with knowledge" who generated the documents, they still are inadmissible because defendant has failed to identity the "person with knowledge" who "transmitted" the information to Mr. den Baas, Ms. Casper and/or Ms. Pearson. Such information, they maintain, is hearsay within hearsay under Rule 805 which, in turn, "indicate[s] lack of trustworthiness" under Rule 803(6). The Court agrees.

With respect to Exhibit 92, the credit proposal, Parker Douglas testified that it is likely that Mr. den Baas, Ms. Casper and/or Ms. Pearson "reviewed the contents" of the memorandum and he "assumed" that they prepared it.[10] Mr. Douglas stated that it was within the scope of their responsibilities to create credit proposals such as this one for ABN bank, but he could not state with certainty that any of them in fact prepared the document.[11] Hans Den Baas testified that while he could not remember writing the memorandum, it "would be unlikely" that it was anyone other than he, Ms. Casper or Ms. Pearson who wrote it.[12] As for the narrative summary contained in the credit proposal, neither Mr. Douglas nor Mr. den Baas could offer testimony regarding its source.

Such equivocal testimony hardly instills confidence in the Court that the credit proposal was written by a "person with knowledge," as Rule 803(6) requires. Even if the identity of the author can be narrowed to one or more of three individuals, the uncertainty of the source of the information on which they relied and the unknown circumstances concerning the

---

4. 1st den Baas Dep. at 62–65; 2nd den Baas Dep. at 113–115; ABN/Douglas Dep. at 50.

5. 1st den Baas Dep. at 62–65; 2nd den Baas Dep. at 113–115; ABN/Douglas Dep. at 51.

6. 1st den Baas Dep. at 25, 27; ABN/Douglas Dep. at 32–33, 37–42.

7. ABN/Douglas Dep. at 45–46.

8. 1st den Baas Dep. at 27–28, 55, 59–60; ABN/Douglas Dep. at 45.

9. 1st den Baas Dep. at 27–28, 55, 59–60; ABN/Douglas Dep. at 46.

10. ABN/Douglas Dep. at 50.

11. ABN/Douglas Dep. at 50–51.

12. 1st den Baas Dep. at 67.

document's preparation indicate a lack of trustworthiness that makes the credit proposal inadmissible under the business records exception. When the proponent of a document cannot point with any degree of certainty to the individual or individuals who generated it or from whom they received the most important information the document contains, there is no reliable basis on which to admit the document and accept it for its truth.

The supporting deposition excerpts offered by defendant with respect to Exhibit 91, the internal ABN memorandum, also are inadequate to justify its admission. Mr. Douglas again testified that he "assumed" that the memorandum was the type of document that Mr. den Baas and/or Ms. Casper would write and that Exhibit 91 was prepared by a person within ABN Bank with knowledge, but he could not state who in fact prepared it.[13] Mr. den Baas testified that while the memorandum was the type that would come from the Corporate Finance Division, he had no recollection of having written it and he did not know for certain if Ms. Casper generated it, though "she might have written it."[14] Again, if the Court cannot be reasonably certain of the actual source of either the memorandum itself or its most significant contents—particularly the calendar of events—or the circumstances under which they were prepared or transmitted to ABN, the Court cannot have confidence that the memorandum and the statements contained in it are sufficiently trustworthy to justify their admission. Lacking such indicia of trustworthiness, Exhibit 91 is not admissible under the business records exception to the hearsay rule.

■ Even if the Court were to give defendant the benefit of the doubt by determining that Parker Douglas' and Hans den Baas' testimony narrowing the sources of the credit proposal and the memorandum down to two or three possible authors was sufficient to meet the Rule 803(6) requirement that a "person with knowledge" be identified, it would still find the documents inadmissible. The narrative summary of the transaction contained in Exhibit 92 and the narrative calendar of events in Exhibit 91 are the portions of the documents that are most important to defendant and which it most wants the Court to consider for their truth. It is these portions that in defendant's view demonstrate most strongly the illegitimacy of the transaction at issue in this case. Unfortunately for defendant, however, they constitute hearsay within hearsay and thus cannot be admitted in evidence in the absence of a separate and independent exception to the hearsay rule that authorizes their admission. *See* Rule 805, Fed.R.Evid. But there is no such exception here.

■ Our court of appeals articulated the rationale for this conclusion in *United States v. Baker*, 693 F.2d 183, 188 (D.C.Cir.1982):

> The justification for this [business records] exception is that business records have a high degree of accuracy because the nation's business demands it, because the records are customarily checked for correctness, and because recordkeepers are trained in habits of precision. McCormick, Evidence § 306, at 720 (2d ed.1972). Double hearsay exists when a business record is prepared by one employee from information supplied by another employee. If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are act-

---

13. ABN/Douglas Dep. at 46.

14. 1st den Baas Dep. at 25–27, 38–39. Two years earlier, in an administrative interview, Mr. den Baas stated that he or Ms. Casper wrote the memorandum. *See* den Baas IRS Q & A at 26–28. In light of the fact that the earlier statement was elicited in an interview that plaintiffs' counsel was not permitted to attend—in addition to the fact that similar testimony was not elicited in the two formal depositions of Mr. den Baas—the Court gives little weight to this statement.

ing in the regular course of business, the multiple hearsay is excused by Rule 803(6). However, if the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have.

*See also United States v. Patrick,* 959 F.2d 991, 1000 (D.C.Cir.1992) (citing *Baker*). "Rule 803(6) does not, by itself, permit the admission of [a] business record ... if the source of the information is an outsider;" it is only admissible if the outsider's statement falls within another hearsay exception. *Wilson v. Zapata Off-Shore Co.,* 939 F.2d 260, 271 (5th Cir.1991). As Judge Boudin recently explained for the First Circuit:

> [T]he business records exception does not embrace statements contained within a business record that were made by one who is *not* a part of the business if the embraced statements are offered for their truth.... [N]o such safeguards of regularity or business checks automatically assure the *truth* of a statement [made] *to* the business by a stranger to it .... "[O]utsider" information, where offered for its truth, [is excluded] unless some other hearsay exception applies to the outsider's own statement.

*United States v. Vigneau,* 187 F.3d 70, 75–76 (1st Cir.1999) (emphasis in original); *see Rassoulpour v. Washington Metropolitan Area Transit Authority,* 826 F.2d 98, 100–01 (D.C.Cir.1987) (evidence excluded as not fitting within business records ex-

ception because of multiple hearsay problem; no showing as to who provided information in report); *United States v. Smith,* 521 F.2d 957, 964 (D.C.Cir.1975) (hearsay in business record not admissible under business records exception; only admissible if it falls within another exception).

The narratives contained in Exhibits 91 and 92 explain a possible transaction that was proposed by an entity *outside* of ABN, and thus constitute statements of out-of-court declarants not connected with ABN that are being offered for the truth of the matters asserted. Defendant has failed to identify the actual sources of the information and the bases for the sources' information, but acknowledges that the information came from outside ABN.[15] While both Parker Douglas and Hans den Baas testified that it was the regular practice of the Corporate Finance Division to summarize information regarding potential transactions and to transmit such information to other divisions within ABN in the formats used in Exhibits 91 and 92, neither was able to testify to the source or sources of the statements in the narrative summary of the transaction or in the calendar of events, or to the accuracy of those statements. *See* 1st den Baas Dep. at 76–77 (indicating that den Baas did not know from where the information was acquired).[16] Because the outside source or sources of the most critical parts of the credit proposal and the internal memorandum—the narrative summary and the calendar of events—are unknown, and because the circumstances of the preparation of the information by the unidentified sources also is in question, Exhibits 91 and 92 contain hearsay within hearsay. Since defendant has identified no separate and

---

**15.** Plaintiffs assert that they do not know who the source of the narratives might be. Pls.' Reply at 13; Pls.' Supp. Submission at 4–5. Defendant asserts that either AHP or Merrill Lynch is the most likely source. *See* Def.'s Surreply at 3–5; Def.'s Supp. Pleading at 2–3, n. 4. Neither party suggests that someone within ABN might have been the source or contests the fact that the information must have come from an entity outside of ABN.

**16.** In Mr. den Baas's administrative interview, he indicated that he *thought* that Merrill Lynch or AHP might have been the source of the narrative information, but that he "really [didn't] recall." *See* den Baas IRS Q & A at 52–53. Considering the equivocal nature of this statement, and for the reasons noted in footnote 14, *supra* at 7, the Court accords little if any weight to the statements made by den Baas in his administrative interview.

independent exception to the hearsay rule that would justify the admission of Exhibits 91 and 92, they are not admissible under the business records exception.

### B. *Rule 807 Residual Exception*

■ The residual exception to the hearsay rule permits the introduction of a hearsay statement "not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness" if the Court makes certain findings. Rule 807, Fed.R.Evid. For an out-of-court statement to be admitted under Rule 807, the proponent of the testimony must demonstrate: (1) that the statement is offered as evidence of a material fact, (2) that the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (3) that the general purposes of the Rules and the interests of justice would be best served by admission of the statement. *See id.*

■ The residual exception to the hearsay rule is intended to be used very sparingly, and only when there exists "equivalent circumstantial guarantees of trustworthiness." Rule 807, Fed.R.Evid.; *see United States v. Washington*, 106 F.3d 983, 1001–02 (D.C.Cir.1997) (residual exception "extremely narrow" and requires testimony to be "very important and very reliable;" proponent of statement bears "heavy burden to come forward with indicia of both trustworthiness and probative force"); 5 WEINSTEIN's FEDERAL EVIDENCE § 807.02[1] ("The residual hearsay exception was meant to be reserved for exceptional cases. It was not intended to confer a broad license on trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b)." (internal quotations omitted)). The Rule therefore contemplates circumstantial guarantees of trustworthiness equivalent to statements that are admissible under other hearsay exceptions. Here, as the Court's analysis regarding the business records exception makes clear, *see supra* at 5–10, there are serious questions regarding the reliability and trustworthiness of Exhibits 91 and 92, particularly with respect to the narrative portions of the documents. Defendant is not even able to identify the source or sources of the critical information contained in the documents, let alone demonstrate that the statements made by the source or sources have any independent indicia of reliability and trustworthiness. Exhibits 91 and 92 therefore are not admissible under Rule 807.

### C. *Co–Conspirator Statements*

■ Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, an admission by a party-opponent is admissible when it "is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Rule 801(d)(2)(E), Fed.R.Evid. The government asserts that ABN Bank, AHP and Merrill Lynch are coconspirators, that they combined to do unlawful acts or lawful acts in an unlawful manner, and that Exhibits 91 and 92 constitute statements made in furtherance of the conspiracy. Specifically, the government claims that the three entities "agreed to create a sham partnership and/or cause the partnership entity to engage in economic sham transactions for the purpose of generating paper losses using a temporary Treasury regulation, 26 C.F.R. § 15a.453-1(c)." Def.'s Mem. in Opp. to Pls.' Motion *In Limine* at 6. The government acknowledges that it is asserting the existence of a civil conspiracy only for the purpose of ensuring the admission of Exhibits 91 and 92; it is not being asserted as an affirmative defense or as a claim in this case. *See* Def.'s Surreply to Pls.' Reply to Def.'s Opp. to Pls' Motion *In Limine* at 2.

■ The elements of a civil conspiracy are (1) an agreement between two or more persons, (2) to participate in an unlawful act, or a lawful act executed in an unlawful

manner, (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement, (4) which overt act was committed pursuant to and in furtherance of the common scheme. *Halberstam v. Welch,* 705 F.2d 472, 477 (D.C.Cir. 1983); *Griva v. Davison,* 637 A.2d 830, 848 (D.C.1994). The government has failed at trial and in its Proffer Re: Civil Conspiracy, filed on September 19, 2000, to prove even the first two elements of this test: that there was an agreement between ABN Bank, AHP and Merrill Lynch to do unlawful acts or lawful acts in an unlawful manner. Because the government has failed to prove these two elements of civil conspiracy, there is no need for the Court to discuss the remaining elements required for civil conspiracy or the additional elements required to admit the statement of a co-conspirator under Rule 801(d)(2)(E). Exhibits 91 and 92 are not admissible under the government's third and final proposed basis for admission.[17]

For the foregoing reasons, it is hereby

ORDERED that plaintiffs' motion *in limine* to exclude defendant's Exhibits 91 and 92 [docket # 138–1] is GRANTED. Exhibits 91 and 92 are excluded and will not be considered by the Court.

SO ORDERED.

---

**17.** During trial, defendant asked the Court for a ruling on Defendant's Exhibits 93 and 94 based on the same analysis as that applied to Exhibits 91 and 92. *See* Trial Transcript, Sept. 21, 2000, at 25 ("I think for the United States, we prefer to see a decision on 91 and 92 applied to 93 and 94."). Despite this request, Exhibits 93 and 94 were never mentioned in defendant's original or supplemental briefs on this issue; defendant did not provide any deposition excerpts or other foundational evidence with respect to Exhibits 93 and 94, and did not address how the analysis that would apply to Exhibits 91 and 92 would apply to Exhibits 93 and 94. For these reasons, Exhibits 93 and 94 also will be excluded unless defendant provides support for their admission under the analysis set forth in this Opinion at the hearing now scheduled for January 25, 2001.