431 So.2d 1126 (1983)
ILLINOIS CENTRAL GULF RAILROAD COMPANY
v.
William B. BOARDMAN.
No. 53767.
Supreme Court of Mississippi.
June 1, 1983.
*1127 Deen, Cameron, Prichard & Young, Winston Cameron, Meridian, for appellant.
Robert D. Jones, Meridian, for appellee.
Before PATTERSON, ROY NOBLE LEE and ROBERTSON, JJ.
ROY NOBLE LEE, Justice, for the Court:
William B. Boardman filed suit in the Circuit Court of Lauderdale County, Mississippi, Honorable Henry Palmer, presiding, against Illinois Central Gulf Railroad Company for personal injuries, arising under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, et seq. The jury returned a verdict for Boardman in the sum of $50,000, and Illinois Central Gulf has appealed here, assigning and arguing six errors in the trial below.

I.
Did the lower court err in failing to sustain appellant's motion to dismiss based on the statute of limitations?
The basis of appellee's claim is that he sustained an injury due to work-related stress in performing his duties as an employee of the railroad company. He began work for the appellant in 1952 as an operator. In 1973, the Gulf Mobile & Ohio Railroad Company merged with Illinois Central Railroad Company, and the job of "caller-operator" was created. Appellee was given that job which involved two general functions: (1) copying train orders, and (2) telephoning personnel to make up or fill vacancies on train crews. The train orders were received from a dispatcher by radio or telephone, and Boardman's job required him to copy them for distribution to the train engineers. These orders had to be letter perfect, even down to commas and periods, since they provided the instructions for each train about destinations, speed, crossings, etc. Any error could result in an accident. The calling function of appellee's job had to be done in accordance with labor agreements, providing that personnel with the most seniority were to be called first, and then on down the line to those with less seniority. Approximately 200 employees were involved. Their names and seniority dates were kept in order by putting this information on wooden blocks which were in turn placed in slots on a larger board. Appellee's work station was an office equipped with three radios and five telephones, and was supposedly off limits to other personnel. There were three shifts and appellee worked the second shift, from 3 p.m. to 11 p.m., five days a week. Appellee's last day of work was November 13, 1977. He filed suit for damages March 20, 1980.
45 U.S.C.A. § 56 (1972) provides that no action shall be maintained under the act unless commenced within three years from the day the cause of action accrued, viz, a three-year statute of limitations. Appellant filed a plea in bar and motion to dismiss the suit, setting up the three-year statute of limitations. The lower court, Honorable Lester Williamson, presiding, partially sustained the plea in bar, holding that matters occurring prior to March 20, 1977, were barred and not admissible, but that matters occurring subsequent to March 20, 1977, were not barred and could be shown. Under *1128 that ruling the work period performed by Boardman for the basis of his complaint was March 20, 1977, to November 13, 1977.
Two rules follow from the Federal Employers Liability Act, one applicable to traumatic injuries and a second to occupational diseases. In Fletcher v. Union Pac. R.R. Co., 621 F.2d 902 (8th Cir.1980), cert. den. 449 U.S. 1010, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981), the court said:
The FELA provides that actions for injuries to employees must be brought "within three years from the day the cause of action accrued." 45 U.S.C. § 56. In cases involving traumatic injury, when the symptoms are immediately manifested so that the employee is aware of the event causing the injury, the cause of action accrues upon the occurrence of the injury, regardless of whether the full extent of the disability is known at that time. Brassard v. Boston & Main R.R., 240 F.2d 138 (1st Cir.1957); Deer v. New York Central Ry., 202 F.2d 625 (7th Cir.1953); Felix v. Burlington Northern, Inc., 355 F. Supp. 1107 (D.Minn. 1973). By the same token, with industrial diseases, where the symptoms are not immediately manifested, the cause of action does not accrue until the employee is aware or should be aware of his condition. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Young v. Clinchfield R.R., 288 F.2d 499 (4th Cir.1961). However, even in cases of traumatic injury, the statute of limitations is not inflexible but may be extended beyond three years for equitable reasons. Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). [621 F.2d at 906].
Appellee contends that his nervous and emotional condition resulted from stress accumulated over a period of time, and that this cause of action accrued on his last day of work, November 13, 1977, when he collapsed because of exhaustion. He further contends that his situation is similar to, or the equivalent of, an occupational disease, where the symptoms were not immediately manifested, and that the cause of action did not accrue until his condition was diagnosed after leaving the job.
The appellant argues that appellee experienced stomach problems attributable to work stress as far back as 1970, and again in 1973; that appellee was aware of the cause regardless of whether the full extent of the problem was known; and that, under Fletcher, supra, appellee is barred from bringing suit, since the three-year period began to run at those earlier times.
In Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), a case involving silicosis, the court noted that when a condition develops over a period of time, it is often difficult to pinpoint when actual injury occurred. Here, appellee was handling his problem fairly well until his unexpected collapse November 20, 1977, and only at that time did he actually become aware of a disabling condition. This case is distinguished from Felix v. Burlington Northern, 355 F. Supp. 1107 (D.C.Minn. 1973), where the plaintiff Felix was involved in a specific accident by falling from a train and brought suit eight years later claiming that complications had arisen. There, the court noted that suit must be brought within the three-year period, regardless of whether the full extent of disability was known.
In Fletcher v. Union Pacific Railroad Co., supra, the court discussed a problem similar to that applicable to appellee here, and said:
Where an injury is caused by continuing or repeated acts, the statute of limitations may not begin to run even when the tort is complete. Stuebig v. Hammel, 446 F. Supp. 31, 35 (M.D.Pa. 1977); Lathon v. Parish of Jefferson, 358 F. Supp. 558, 559 (E.D.La. 1973); 4 Restatement of Torts 2d § 899c. The statute of limitations may be tolled until the tortious conduct ceases, on the theory that one should not be allowed to acquire a right to continue the tortious conduct. Donaldson v. O'Connor, 493 F.2d 507, 529 (5th Cir. 1974), vacated on other grounds, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396, on remand, 519 F.2d 59 (5th Cir.1975); Harper v. Union Savings Ass'n, 429 F. Supp. 1254, 1260 (N.D. *1129 Ohio 1977). An employee's right of action against his employer for personal injuries may be tolled until the last day the employee was subjected to the conditions causing the injury. Simmons v. American Mutual Liability Ins. Co., 433 F. Supp. 747, 751 (S.D.Ala. 1976), aff'd without opinion, 560 F.2d 1022 (5 Cir.1977).
At least one court has applied these principles to a FELA claim for an injury which was not an occupational disease. In Fowkes v. Pennsylvania R.R., 264 F.2d 397 (3d Cir.1959), the plaintiff's use of a defective air hammer had the cumulative effect of causing joint damage and arthritis. That harmful working condition was treated as a continuing or frequently repeated wrong which tolled the running of the statute of limitations. The court refused to limit the claim to aggravation of the injury that had occurred within three years of when suit was filed. Instead, it reasoned that the master's failure to perform its duty was a single wrong, so that the statute did not begin to run on the injury until the master-servant relationship ended. Id. at 399. (Emphasis added) [621 F.2d at 908].
We are of the opinion that the reasoning and logic expressed in the Fletcher case should apply to the facts of the present case. We hold that the lower court was partially correct in declining to sustain the plea in bar and motion to dismiss in full, but erred in not overruling them in toto.

II.
Did the lower court err in granting Jury Instruction P-15 at the request of the appellee?
Instruction P-15 follows:
The court instructs the jury that the employee, William B. Boardman, had a right to assume that the officers and agents of the defendant, Illinois Central Gulf Railroad Company, would properly discharge their duties as it pertains to the treatment of said employee, and if you believe from a preponderance of the evidence that any such officer and agent of Illinois Central Gulf Railroad Company failed to discharge such duty to plaintiff and that such failure, if any, was a direct and proximate cause or a contributing cause to the plaintiff's injury, your verdict shall be for the plaintiff against the defendant, Illinois Central Gulf Railroad Company.
The appellant contends that the instruction was erroneous because it told the jury that the officers and agents of the railroad company had duties to the appellee, in addition to the requirement of the Federal Employers' Liability Act that railroads have the duty to exercise reasonable care to furnish the employees with a safe place to work. Instruction P-4 did state that it was the duty of the appellant to furnish appellee with a reasonably safe place to work and with reasonable and proper working conditions. However, Instruction P-15 in telling the jury that the appellee "had a right to assume that the officers and agents of the defendant ... would properly discharge their duties as it pertains to the treatment of said employee, and if you believe from a preponderance of the evidence that any such officer and agent of Illinois Central Gulf Railroad Company failed to discharge such duty ...," went far beyond the scope of the issues involved in the case. The instruction turned the jury loose in an open field, with only the sky as the limit, and without any guidelines or boundaries to go by.
We are of the opinion that granting the instruction constituted error.

III.
Did the lower court err in refusing to grant appellant a peremptory instruction?

IV.
Is the verdict of the jury contrary to the weight of the evidence?
The testimony of appellee was to the effect that he was under a heavy workload; that his job required absolute precision; that distractions caused by the communication equipment and unauthorized personnel *1130 in his office made the work more difficult; that the stress and strain affected his appetite, his sleep and his energy until he was totally exhausted; and that he was required to quit his job November 13, 1977, and has been unable to work since. Appellee was corroborated to some extent by his wife, Mrs. Virginia Boardman.
Dr. James Sabin, a psychiatrist, testified that, in his opinion, appellee's disability is related to work stress and anxiety in connection with his work.[1] On cross-examination, Dr. Sabin said that he had never seen or heard of appellee before February 9, 1978; that he had never been to appellee's place of employment and had no personal knowledge of the conditions there; that he had made no investigation "of any other source" and the only information he had concerning appellee's employment or his physical problem consisted of what appellee told him. The testimony of Dr. Sabin was weakened considerably on cross-examination.
Evidence for the appellant reflected that Eugene Stockman, a train master from January 19, 1974, to January 19, 1978; George Fisher, an employee of appellant since 1955 and a train master and assistant train master; George Ivy, office manager for appellant from 1975 through 1977; and George Jennings, an employee of appellant for twenty years and a train master; all have known appellee for many years. Some of them had supervised him. All saw him each day and had never heard him complain about working conditions or stress from his job until after he left the employment of appellant. They had not heard any complaint about unauthorized personnel in appellee's office.
In considering the standard for review on request for a peremptory instruction, the Court restated the rule in Morrison v. Illinois Central Gulf RR Co., 387 So.2d 754, 756 (Miss. 1980), as follows:
In determining whether or not a motion for directed verdict should be granted, the Court is required
"... to consider the evidence on behalf of the party against whom a directed verdict is requested, along with all reasonable inferences, in the light most favorable to said party, disregard any evidence of the other party in conflict therewith, and, if the evidence and reasonable inferences therefrom would support a verdict for such party, the motion for directed verdict should be denied. .. ." Georgia Pacific Corp. v. Blakeney, 353 So.2d 769, 772 (Miss. 1978).
The Court had previously stated in Morrison at 755:
Under the Federal Employers' Liability Act, a railroad company is liable for damages, if it is guilty of negligence which contributed even to the slightest degree in producing the employee's injury. Rogers v. Missouri Pacific R.R., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Davis v. Burlington Northern, Inc., 541 F.2d 182 (8th Cir.1976). However, such negligence must be proved in order to recover under the act. Mississippi Export R.R. v. Williams, 266 So.2d 28 (Miss. 1972); Mobile & O.R.R. v. Clay, 156 Miss. 463, 125 So. 819 (1930).
We are of the opinion that the evidence was sufficient to withstand the request for peremptory instruction on the part of appellant. However, in view of the fact that the period of appellee's complaint was limited by the court to the time from March 22, 1977, to November 13, 1977, such evidence was extremely weak and, in our opinion, against the weight of the evidence on causal connection. With that situation in the record and the granting of Instruction P-15, the judgment of the lower court must be reversed and the case remanded for a new trial consistent with this opinion.
In view of our decision here, it is not necessary to address the other two assignments of error.
REVERSED AND REMANDED.
*1131 PATTERSON, C.J., WALKER and BROOM, P.J., BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] The three witnesses mentioned were relied upon to establish appellee's case. In rebuttal, David F. Jones testified for appellee and corroborated much of what he testified to.