Milton M. WILLIAMS

v.

SOUTHERN PACIFIC
TRANSPORTATION
COMPANY.

Civ. A. No. J91–0172(W).

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 28, 1992.

John H. Ott, McComb, MS, for plaintiff.

Charles G. Copeland, Michael W. Baxter, Jackson, MS, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WINGATE, District Judge.

### I. Introduction

Before the court is the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) [1] (hereinafter "Rule 56"). In this lawsuit, filed under the Federal Employers Liability Act (hereinafter "FELA"), 45 U.S.C. § 51 [2] and the Locomotive Boiler Inspection Act (hereinafter "BIA"), 45 U.S.C. § 23,[3] the

---

1. **Rule 56. Summary Judgment.**
 (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Section 51 of 45 U.S.C. provides in pertinent parts as follows:
 **Liability of common carriers by railroad, in interstate or foreign commerce, for injuries to employees from negligence; employee defined**
 Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

 Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

3. **§ 23. Use of unsafe locomotives and appurtenances unlawful; inspection and tests**
 It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 22 to 29 and 31 to 34 of this title and are able to withstand such test or tests as may

plaintiff, Milton M. Williams, a resident citizen of Mississippi (hereinafter "Williams"), seeks compensatory damages for defendant's alleged negligent acts in exposing plaintiff to excessive and constant employment-related noises which allegedly have caused plaintiff to experience a significant hearing loss. Defendant Southern Pacific Transportation Company (hereinafter "Southern Pacific") asserts two grounds in support of its motion for summary judgment: (1) that plaintiff has failed to demonstrate a causal connection between his alleged hearing loss and any alleged negligence or breach of a statutory duty by Southern Pacific during plaintiff's employment; and (2) that plaintiff's action is barred by the applicable three-year statute of limitations set forth in 45 U.S.C. § 56.[4] Persuaded that both grounds have merit, this court hereby grants defendant's motion for summary judgment. The court reasons as follows.

## II. Facts

Williams was employed by Southern Pacific, first, as a locomotive fireman and then as a railroad engineer, from 1947 to 1985. Williams retired from Southern Pacific on November 7, 1985, at the age of 61.

Prior to his employment with Southern Pacific, Williams served in the Army from 1943 to 1945. During his service, which included combat in the European theater, Williams was exposed to the noise of rifles, machine guns, and explosives. During this time, Williams never wore hearing protection.

Williams first noticed his hearing loss sometime in the early 1970's, while enroute from Avondale, Louisiana, to New Orleans. During the early 1970's, Williams saw a physician two or three times about his hearing problems. Since his retirement,

Williams' wife has told him he has a hearing problem. In 1985, Williams shopped for hearing aids, but never purchased any.

In 1986, Williams attended, along with other retired railroad employees, a meeting to explore the possibility of pursuing a claim against Southern Pacific for hearing loss. Shortly after that meeting, Williams called an attorney to inquire about legal action against Southern Pacific for his hearing loss. The attorney told Williams that he had a statute of limitations problem.

On or about January 11, 1991, Williams went to Beltone Hearing Service and received a hearing evaluation, administered by Debbie Fortenberry (hereinafter "Fortenberry"). On or about June 8, 1992, Williams was evaluated by Gene Thompson (hereinafter "Thompson"), an audiologist and the plaintiff's only expert witness.

According to Fortenberry and Thompson, Williams' impairment is due to a sensorineural hearing loss. Fortenberry has no opinion as to the cause of Williams' hearing loss. Thompson suspects Williams' hearing loss is noise-related, but he, too, has no opinion as to what particular type of noise actually caused, or contributed to, Williams' hearing loss.

The plaintiff filed his complaint on or about April 11, 1991. On or about May 7, 1991, the complaint was served on the defendant, who filed an answer on or about May 30, 1991.

## III. Failure to State a Claim

In order to recover under FELA, a plaintiff must establish: (1) that he was injured within the scope of his employment; (2) that said employment was in furtherance of the railroad's commerce in interstate transportation; (3) that his employer

---

be prescribed in the rules and regulations hereinafter provided for.

4. **§ 56. Actions; limitations; concurrent jurisdiction**

No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.

Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

was negligent; and (4) that this negligence played a part in causing the injury. *Sinkler v. Missouri Pacific Railroad Co.,* 356 U.S. 326, 330, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958); *Green v. Terminal River Ry. Co.,* 763 F.2d 805, 808 (6th Cir.1985).

■ The BIA imposes absolute liability upon a defendant where a plaintiff presents proof of an unsafe locomotive component and injury which is proximately caused by the unsafe condition. *Green,* 763 F.2d at 810. A plaintiff need not establish that the defect was the sole cause of injury, *Carter v. Atlanta & St. Andrews Bay Railway Co.,* 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236 (1949), as contributory proximate cause is sufficient.

The Supreme Court expressed the standard for summary judgment in *Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1968), as follows:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon a motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

After adequate time for discovery, the plaintiff here has failed to demonstrate that the defendant has committed any act of negligence or breached any statutory duty allegedly owed to the plaintiff. Further, the facts before this court indicate that the plaintiff has failed to put forth any evidence of causation, an essential element under both FELA and the BIA.

For example, Fortenberry testified as follows:

Q. As I understand it, you don't have any opinions as to what caused Mr. Williams' hearing loss; is that correct?

A. If you are asking me, did I diagnose the cause of hearing loss, no.

Q. Can you diagnose the cause of his hearing loss?

A. No.

Q. And you are not representing to us any opinions as to the cause of his hearing loss, is that correct?

A. I am not—I can't—I can tell you what causes a nerve type hearing loss just the same way I told Mr. Williams when he asked me. Every person that I test in this office when I tell them they have a sensorineural type of hearing loss, they ask me, "Well, what caused this hearing loss?" That's what they ask me point blank is "What caused my hearing loss," and I say, "Well, there's a lot of different things that cause hearing loss, and it was probably a mixture of a lot of different things, but there's no way to know what caused your hearing loss."

\* \* \* \* \* \*

Q. But as far as telling us or Mr. Williams what, in fact, caused his particular hearing loss, you can't say?

A. No. I couldn't do that. No.

(Deposition of Debbie Fortenberry, pp. 59–60, 62)

The plaintiff's only expert witness, Thompson, testified as follows:

Q. Okay. And you don't have any opinions as to the particular or the exact cause of Mr. Williams' hearing loss, do you?

A. My opinion is that I suspect that his hearing loss is noise related.

Q. What do you mean by, "suspect?"

A. I feel like that it's a high probability that noise is the main factor that caused his hearing loss.

Q. But you can't say what type of noise?

A. I don't say which noise.

Q. You don't have any opinions as to the type of noise which may have caused Mr. Williams' hearing loss?

A. No sir.

Q. Is his hearing pattern—as shown on this audiogram—is it consistent with a pattern of hearing loss which would show up for noise exposure due to gun fire, for example, in the military?

A. That's a good possibility.

Q. Okay. And you've not ruled out or you cannot say whether or not Mr. Williams' childhood diseases may have caused part of his hearing loss?

A. Well, I can't rule that out, but the fact that he had not suspected any hearing loss until 1980, you know, is a pretty good indicator that it came on later.

\* \* \* \* \* \*

Q. Okay. And do you know whether the aging process may have caused Mr. Williams' hearing loss or part of his hearing loss?

A. No, sir, I don't.

(Deposition of Gene Thompson, pp. 63–64)

 The deadline for designating experts has passed, and it is clear that Williams has not presented any medical or expert testimony which could establish a causal nexus between the plaintiff's alleged hearing loss and exposure to noise due to Southern Pacific's alleged negligence or breach of a statutory duty while employed by the defendant. Neither Fortenberry nor Thompson has testified that railroad noise caused or contributed to the plaintiff's alleged loss of hearing. The plaintiff's bare assertion that he "would show that the element of causation has been established through deposition testimony of the plaintiff and his witnesses ...," (Memorandum brief in opposition to defendant Southern Pacific Transportation Company's motion for summary judgment, p. 1), absent the presentation of any supporting proof, is not the sort of response required by Rule 56. *Supra,* note 1, at 1228. Hence, this court must conclude that plaintiff has failed to offer any proof of causation, an element of proof essential to his case.

### IV. Statute of Limitations

 The applicable statute of limitations here is found in 45 U.S.C. § 56, the pertinent part of which states:

No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.

The questions here are simply on what date did this cause of action accrue and after accrual whether the plaintiff filed this action within three years of that date. Compliance with the statute of limitations is a condition precedent to recovery, and the failure to commence the action within three years from the date of its accrual bars the plaintiff's remedy and destroys the defendant's liability as well. *Emmons v. Southern Pacific Transportation Co.,* 701 F.2d 1112, 1117 (5th Cir.1983). The burden of proof is upon the plaintiff to allege and prove that the action was commenced with the three year period. *Id.* at 1118.

 In regards to the statute of limitations under FELA, two rules have developed for different types of injuries. *Fletcher v. Union Pacific R.R. Co.,* 621 F.2d 902, 906 (8th Cir.1980); *see also Illinois Central Gulf R. Co. v. Boardman,* 431 So.2d 1126, 1128 (Miss.1983). In the case of a traumatic accident, where the injury is immediately apparent, the action accrues on the date of the occurrence. *Id.* As to occupational diseases, as here, where symptoms do not immediately manifest themselves, the action does not accrue until the plaintiff is aware or should be aware of his condition. *Id.*

In *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282 (1949), the Supreme Court held, in a FELA case, that

[when] no specific date of contact ... can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time[,] the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves.

In *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259

(1979), the Supreme Court articulated the so-called "discovery" rule. The plaintiffs brought a malpractice suit under the Federal Tort Claims Act (hereinafter "FTCA").[5] The Court held that, under the FTCA, a cause of action accrues when a plaintiff knows both the existence and the cause of the injury and not at a later time when he also learns that the acts inflicting the injury may constitute medical malpractice. *Id.* The Fifth Circuit in *Dubose v. Kansas City Southern Ry. Co.*, 729 F.2d 1026 (5th Cir.), cert. den., 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 113 (1984), and the Third Circuit in *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356 (3rd Cir.1986), applied the *Kubrick* rule to FELA cases as well.

Under the guidance of *Urie* and *Kubrick*, the federal courts have applied the discovery (an objective, "knew or should have known" test) to determine when the limitation period begins to run. *See Emmons*, 701 F.2d at 1119 (limitation period begins to run when claimant becomes aware that he has been injured and that his injury is work-related); *Frier v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir.1990) (the test is an "objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause"); *Albert v. Maine Cent. R. Co.*, 905 F.2d 541, 544 (1st Cir.1990); *Townley v. Norfolk Western Ry. Co.*, 887 F.2d 498, 501 (4th Cir.1989).

■ Actual knowledge by the plaintiff of the governing cause of the injury is not necessary to a finding that the cause of action has accrued. *Frier*, 909 F.2d at 1096. Further, it is not necessary that the plaintiff be formally advised by a physician or receive a medical diagnosis as to the cause of injury for the action to accrue. *Emmons*, 701 F.2d at 1122. Nor must the injury reach its maximum severity before the cause is deemed to accrue. *Frier*, 909

F.2d at 1096. The action accrues when the injury first manifests itself to the plaintiff.

As recognized by the courts, the discovery rule imposes an affirmative duty on plaintiff to investigate the potential cause of his injury. *Frier*, 909 F.2d at 1095, and *Albert*, 905 F.2d at 544. This is a fair rule since the discovery rule should not be abused by plaintiffs who are aware that an injury exists yet choose to ignore it and fail to investigate the cause. *Frier*, 909 F.2d at 1095. Obviously, such a course of wilful inaction has the potential of visiting prejudice upon defendants who may be blindsided by lawsuits long after the complained-of negligence.

■ Turning to the facts *sub judice*, Williams knew he was having hearing problems prior to his retirement in 1985. In fact, Williams first became aware in the early 1970's that he had a hearing problem which he attributed to railroad noise. (Deposition of Milton M. Williams, pp. 38–41). With respect to his awareness prior to 1985, Williams testified as follows:

Q. And your wife is one that first indicated to you that she thought you were hard of hearing?

A. Umm-hmm.

Q. It didn't occur to you?

A. Well I could tell that I was—you know, I was annoying her with the television.

Q. How many years ago did that start?

A. Well, that's been going on—that was before I retired. I knowed I was having some hearing problem but it didn't seem to me like it was enough to bother to go get checked, you know, but after I retired I decided, well, I'll go ahead and get some hearing aids.

Q. Now, you said you thought you were having some problem before you retired and you retired in 1985?

---

**5.** Title 28 U.S.C. § 2401 provides in pertinent part as follows:

**Time for commencing action against United States**

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

A. Umm-hmm.

Q. How far back before you retired did you notice that you were having some problems?

A. Well, I guess it was so little til I just—so little problems I was having til I just can't set no time on it. I don't know.

Q. But you would put it before 1985, you just can't come up with a ...

A. Yeah, just—it was before '85 that I knew that I—you know, just from them telling me, "You're hard of hearing." But I wasn't, you know, I can hear as good as you can. If you will talk loud enough I can still hear.

(Deposition of Milton M. Williams, pp. 65–66)

Williams also attended a meeting of retired railroad men in New Orleans, Louisiana, in 1986 to explore the possibility of pursuing a hearing loss claim against Southern Pacific. (Deposition of Milton M. Williams, pp. 55–59, 61). With respect to this meeting, Williams testified as follows:

Q. So in 1986 you would have gone to a meeting in New Orleans? Is that where you said?

A. Yeah, in New Orleans; a retired engineers or retired employees meeting.

Q. And you were looking into making a claim for hearing loss ...

A. Yeah.

Q. ... against the railroad?

A. Yeah. And they give me a number to call and I made a—I called these people, and they says, "Well, we'll check it out." And they—later—I called them back later, and they said, "You might have let the statute of limitations catch up to you." I says, "I don't know nothing about that, but I forgot about it." I didn't pursue it anymore til I really got to where I couldn't hear very—you know, I can hear, but I—it's aggravating to try to have the television on, and my wife having to go in the other room near about it to keep from busting her eardrums now.

Q. Well, in 1986, you knew that you had a hearing problem and it was due to railroad noise, or you felt it was due to railroad noise?

A. I don't know. I kind of felt that all the noise that I was around contributed to it, I do believe that because I was around some terrific noises.

Q. Well, in 1986, if your hearing problem in 1986 wasn't due to railroad noise, what would it have been due to?

A. I don't know. I just don't know.

Q. I mean, did you have any reason to believe that it was anything other than railroad noise?

A. No. No I don't.

Q. Is that why you went to the meeting in 1986 because you thought your hearing problem may have been due to railroad noise?

A. Yeah. ...

Q. But in 1986 you felt like you had a hearing problem and that's why you went to the meeting?

A. Yeah.

(Deposition of Milton M. Williams, pp. 55–59, 61–61)

There is additional proof that Williams knew or should have known of his alleged hearing loss and its cause more than three years before he brought this action: Williams priced some hearing aids in 1985 but decided not to purchase them. (Deposition of Williams, pp. 67–68); Fortenberry testified that Williams indicated to her that he had been aware of his hearing problem for twenty years. (Deposition of Debbie Fortenberry, pp. 26–27, 58); and Williams' own expert witness, Gene Thompson, also testified that Williams indicated that he had been aware of his hearing problem as early as 1980. (Deposition of Gene Thompson, p. 48).

By at least 1986, at the time of the New Orleans meeting, Williams certainly was aware of his hearing problem and aware of its possible cause, but he chose to ignore this knowledge beyond the time period prescribed by the statute of limitations. Although this court has empathy for Mr.

**1234**

Williams, the court cannot reward him for his lack of diligence. As stated in *United States v. Kubrick, supra:*

Statutes of limitations, which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter,* 101 U.S. 135, 139, 25 L.Ed. 807 (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*Kubrick,* 444 U.S. at 117, 100 S.Ct. at 356–57.

 Under FELA, the statute of limitations may be extended for equitable reasons, *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). A railroad may be equitably estopped from asserting the statute of limitations as a defense if misrepresentations by the railroad caused the plaintiff/employee's failure to bring the action within the three-year period, *Fletcher v. Union Pacific R. Co.,* 621 F.2d 902, 906 (8th Cir.1980). Or, the statute of limitations may be tolled by extenuating circumstances, especially where there is no prejudice to the railroad, *Burnett v. New York Central R.R.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). However, neither of these scenarios is presented here. Further, this court notes that, "given the policies favoring limitation periods, federal courts have typically extended equitable relief only sparingly." *Wilson v. Zapata Offshore Co.,* 939 F.2d 260, 276 (5th Cir.1991), *quoting Irwin v. Veterans Administra-*

*tion,* 498 U.S. 89, 94–96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). Further, and most significantly, the equitable tolling of the statute of limitations has not been raised by Williams and therefore is not an issue in this case.

### V. *Conclusion*

For the foregoing reasons, finding that the plaintiff has failed to state a cause of action and that he has commenced this cause of action after the running of the three-year limitation period, this court grants the defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. A separate judgment will be entered in accordance with the local rules.

SO ORDERED.