291 N.J. Super. 542 (1996)
677 A.2d 1150
NICHOLAS A. BERLEN, PLAINTIFF-APPELLANT,
v.
CONSOLIDATED RAIL CORPORATION, A CORPORATION OF THE STATE OF PENNSYLVANIA AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1996.
Decided June 25, 1996.
*544 Before Judges SKILLMAN and EICHEN, JJ.
William P. Wielechowski argued the cause for appellant (Horn, Shechtman & Hirsch, P.A., attorney; Mr. Wielechowski on the brief).
James Savage argued the cause for respondent (Ruprecht & Hart, attorneys; Mr. Savage, of counsel and on the brief).
The opinion of the court was delivered by EICHEN, J.A.D.
Plaintiff appeals a summary judgment in favor of defendant in a Federal Employers' Liability Act case, 45 U.S.C.A. §§ 51 to 60 (FELA). Plaintiff contends that the Law Division judge erred in concluding as a matter of law that his claims under the FELA were time-barred by the three-year statute of limitations provision in the FELA, 45 U.S.C.A. § 56. We agree and reverse the dismissal of plaintiff's FELA complaint.
Plaintiff was employed by defendant Consolidated Rail Corporation (Conrail) commencing in 1973.[1] Plaintiff filed a complaint against Conrail under the FELA alleging that he had been unreasonably exposed during his employment to deleterious conditions consisting of excessively high and dangerous noise levels which caused a permanent and disabling loss of hearing in both ears.
*545 Because this is an appeal of a summary judgment, we must scrutinize the record in a light most favorable to plaintiff. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Brill v. Guardian Life, 142 N.J. 520, 540, 666 A.2d 146 (1995).
The record reflects plaintiff began to experience periodic ringing in his ears and trouble hearing in or about March 1986. At that time, plaintiff's treating physician, Dr. Carlos J. Gomez, M.D., treated plaintiff for a temporal lipoma, prescribing headache medication, and diagnosed "[n]ormal hearing with drop [at] high frequency," concluding that plaintiff's hearing symptoms were "probably due to exposure to loud noises." In February 1987, plaintiff returned to Dr. Gomez complaining of light-headedness and ringing in his ears. Following an ear examination, Dr. Gomez reported "external canal and tympanic membrane normal with adequate hearing," diagnosed a "possible viral" condition and prescribed an antibiotic.
On April 27, 1987, Conrail Health Services examined plaintiff's hearing. In completing a questionnaire about his health, plaintiff marked "yes" when asked if he had "noises in his ears" and when asked if he "now [had] difficulty hearing." He also stated he had ringing in his ears which he believed was "due to job." However, he attributed to his job only the ringing and not his hearing difficulty.
Conrail Health Services informed plaintiff by letter dated January 12, 1988 of the results of his examination:

Your hearing in the right ear is satisfactory for hearing and understanding conversation. Your hearing in the left ear indicates that in some situations you may have difficulty hearing or understanding conversation with this ear. You will be notified when the next hearing check is due. If you are wearing hearing protection while working, you should continue to do so. You should also contact your supervisor to determine if you are correctly wearing the proper protection. (emphasis added)
On November 20, 1989, Conrail Health Services again examined plaintiff, and he again responded affirmatively to the questionnaire that he had "noises in his ears" and "now [had] difficulty hearing." *546 This time, however, Conrail Health Services informed plaintiff by letter dated December 14, 1989, that the results of his hearing examination were satisfactory:

Your hearing in both ears is satisfactory for hearing and understanding conversation. There has been no change in hearing in your right ear since the last check. The previous change in your left ear is no longer present. You will be notified when the next hearing check is due. If you are wearing hearing protection while working, you should continue to do so. You should also contact your supervisor to determine if you are correctly wearing the proper protection. (emphasis added)
On January 19, 1991, Conrail again checked plaintiff's hearing. This time Conrail reported that

[f]or high-pitched sounds ... the hearing test results indicate that your left ear shows a severe hearing loss and your right ear shows a moderate hearing loss [and] [f]or common sounds such as voices and most everyday sounds, the hearing test results indicate that your left ear shows a mild hearing loss and your right ear shows a slight hearing loss. (emphasis added)
The test report indicated the possible reasons for the changes from the last test "including medication, test problems, exposure to noise while not wearing hearing protection, or ear problems such as wax or infection." As in the past, the report reminded plaintiff of the importance of "protect[ing] your hearing from damage whenever you are exposed to loud noise both on and off the job, by always wearing hearing protection."
Sometime thereafter in 1991, Dr. Gerald West examined plaintiff's hearing. On September 27, 1991, plaintiff filed the instant law suit. Plaintiff claims he first realized he had a hearing problem when he received the results of Dr. West's examination.[2]
During discovery, plaintiff stated "I got letters [from Conrail] of results of tests but they were kind of vague and gave me the impression that there was nothing wrong."[3] Additionally, plaintiff *547 noted, "it appeared like it wasn't a hearing problem[,] just a ... loss from old age or the aging process[]."
In granting summary judgment in favor of defendant, the trial judge stated as follows:
It seems clear to the Court that the plaintiff himself knew that he had a hearing loss, a hearing problem, back in 1986 when he went to Dr. Gomez, who was apparently a specialist. He certainly felt and believed in 1987 that he had a work related hearing condition when he answered the questionnaire. He also stated quite honestly in his affidavit that he filed in this case that he thought in 1987 he had such a work related condition.
The action here [was filed] ... September 27, 1991, so this Court finds that any claim for an initial hearing loss is barred by the statute of limitations.
As noted, we disagree and remand for trial.
The FELA provides that "[n]o action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C.A. § 56. The parties agree that a FELA cause of action accrues when the injured person becomes aware or has reason to become aware of both the injury and its probable cause. See Dubose v. Kansas City Southern Ry. Co., 729 F.2d 1026, 1030 (5th Cir.1984), cert. denied, 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 113 (1984). However, defendant maintains that plaintiff had an affirmative duty to investigate the extent and cause of his injury once he experienced difficulty hearing in March 1986, complained to Dr. Gomez of ringing in his ears and hearing loss, and Dr. Gomez reflected in his records that plaintiff's hearing problems and ringing in his ears (also known as tinnitus) were probably due to exposure to loud noise. In the alternative, defendant maintains plaintiff's claim accrued no later than 1987 when plaintiff complained to Conrail Health Services of difficulty in hearing and ringing in ears "due to job."
*548 Conversely, plaintiff maintains his complaint was timely filed within three years of the day his cause of action accrued, that date being sometime in 1991 when he was diagnosed by Dr. West and for the first time became aware he had a permanent hearing problem caused by his employment by Conrail. Plaintiff argues he had no affirmative duty to investigate the cause of his injury when he first reported hearing problems because the statute of limitations does not begin to run merely upon his uninformed speculation, unsupported by medical diagnosis, that he might have a hearing problem due to occupational noises. He argues that after defendant's "own doctor informed [him] in December 1989 that his hearing in both ears was satisfactory," whatever "suspicions" he may have had about a work-related hearing problem were "alleviated." Further, plaintiff contends that even if he "knew" he had an occupationally related hearing problem in April 1987, "the statute of limitations was halted upon the Defendant's notification ... in December, 1989 that he had no hearing problems."
The question of when a cause of action accrues, thereby commencing the statute of limitations period, is complex when the injury involved is an "occupational disease[], as here, where symptoms do not immediately manifest themselves." Williams v. Southern Pac. Transp. Co., 813 F. Supp. 1227, 1231 (S.D.Miss. 1992). In Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the United States Supreme Court observed that the congressional purpose in enacting the FELA would be thwarted if a plaintiff were charged with knowledge of the slow progress of an injury or disease "at some past moment in time, unknown and inherently unknowable even in retrospect." Id. at 169, 69 S.Ct. at 1024, 93 L.Ed. at 1292. Thus, the Court ruled that, where "the injurious consequences of exposure are the product of a period of time rather than a point of time[,] ... the afflicted employee can be held to be `injured' only when the accumulated effects of the deleterious substance manifest themselves." Id. at 170, 69 S.Ct. at 1025, 93 L.Ed. at 1293 (quoting with approval Associated Indem. *549 Corp. v. Industrial Accident Comm'n, 124 Cal. App. 378, 381, 12 P.2d 1075 (1932)).
The Urie rule was refined by the United States Supreme Court in U.S. v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), a medical malpractice case brought under the Federal Tort Claims Act. There, the Court concluded that the plaintiff's hearing loss claim accrued at the time plaintiff first became armed with the critical facts of the existence and cause of his injury. Id. at 122, 100 S.Ct. at 359, 62 L.Ed.2d at 269. A significant number of federal courts have interpreted Urie and Kubrick to mean that an occupational disease claim is deemed to accrue under the FELA when the plaintiff becomes aware or reasonably should have been aware of the critical facts of injury and causation. E.g., Dubose v. Kansas City Southern Ry. Co., supra, 729 F.2d at 1031 (observing in a FELA occupational disease case that "[w]hen a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury").
In Kichline v. Consolidated Rail Corp., 800 F.2d 356 (3d Cir.1986), the Third Circuit, applying Kubrick to a FELA claim, stated that "the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he's entitled to redress." Id. at 359 (quoting Zeleznik v. United States, 770 F.2d 20, 23 (3d Cir.1985) (emphasis added)); see also In re Central R.R. Co., 950 F.2d 887, 892 (3d Cir.1991), cert. denied sub nom. 503 U.S. 971, 112 S.Ct. 1586, 118 L.Ed.2d 305 (1992). A number of other federal courts have recognized and similarly imposed an affirmative duty upon an injured party to investigate his legal remedies once he possesses "sufficient critical facts" regarding both his injury and its probable cause. See Albert v. Maine Cent. R.R. Co., 905 F.2d 541 (1st Cir.1990); Fries v. Chicago & Northwestern Transp. Co., *550 909 F.2d 1092 (7th Cir.1990); Williams v. Southern Pac. Transp. Co., supra, 813 F. Supp. 1227.
In Albert, supra, 905 F.2d 541, the First Circuit affirmed summary judgment on statute of limitations grounds regarding several railroad employees who commenced a FELA action in 1987 alleging occupational hearing loss. The court noted that each employee had reported experiencing some sort of hearing loss which the employee suspected was occupationally related but then waited more than three years to assert a FELA claim. Id. at 542-43. The employees, however, contended that their "lay diagnosis or suspicions of their medical condition," without medical diagnosis, did not demonstrate they knew their injuries were work related and need not have instituted suit until their suspicions were medically corroborated. Id. at 544. The court rejected this argument, stating:
Once each appellant reached the conclusion that he believed he had a hearing loss and that he believed that the injury was caused by his employment, we find that he had a duty to investigate the situation in order to confirm or deny his belief. This is especially true here where the appellants thought they knew the cause of their injury. To hold otherwise would essentially render the FELA statute of limitations meaningless.
[Ibid. (emphasis added)]
Notably, the court in Albert distinguished the case from one where a medical diagnosis repudiates a plaintiff's lay suspicions that the injury is work-related. Ibid. (distinguishing Aerojet-General Shipyards, Inc. v. O'Keeffe, 413 F.2d 793 (5th Cir.1969)).[4]
*551 In Fries, supra, 909 F.2d 1092, the Seventh Circuit also affirmed summary judgment on limitation grounds in a FELA hearing loss case. There, the plaintiff, a machinist, had acknowledged he experienced hearing loss in 1980 and 1981. The machinist did not seek medical examination until 1985 when he was required by his job to submit to a physical examination for unrelated reasons. At this exam in 1985, for the first time he was medically diagnosed with hearing loss. He thereafter filed suit in 1987, more than three years after experiencing hearing loss but only two years after his medical diagnosis. Id. at 1094.
The court held that mere "suspicion of causation" need not ripen into actual knowledge in order to find that a cause of action has accrued. Id. at 1096. The court explained the Urie-Kubrick rule as adopted by the Seventh Circuit:
[A] cause of action accrues for statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause.... That this rule imposes on injured plaintiffs an affirmative duty to investigate the potential cause of his injury has not been lost on the courts.
[Id. at 1095. (emphasis added)]
"[U]pon experiencing symptoms a plaintiff has a duty to investigate both the injury and any suspect cause." Id. at 1096. The court held that the machinist did not satisfy this duty to investigate because he failed to take any action until the injury was "made known to him by some unplanned incident, such as the unexpected medical diagnosis." Id. at 1095-96.
In Williams, supra, 813 F. Supp. 1227, a district court in the Fifth Circuit also addressed the appropriateness of a summary judgment on limitations grounds in a hearing loss case brought under the FELA. The court likewise determined, "the discovery rule imposes an affirmative duty on plaintiff to investigate the potential cause of his injury." Id. at 1232. With this rule in mind, the court determined that plaintiff was aware of his hearing problem and its possible cause by at least 1986 based upon the following facts: plaintiff knew before 1985 he had some hearing problem but decided at the time it was not "enough to bother to go *552 get it checked"; he testified that before 1985, his wife had told him he was "hard of hearing," although he was still able to hear if people talked loudly. Ibid. He also attended a meeting in 1986 to explore the possibility of pursuing a hearing loss claim against defendant, but decided not to pursue a claim, admitting he went to the meeting because he thought his hearing problem may have been due to railroad noise. Additionally, in 1986 he believed that occupational noise contributed to his hearing loss and was not aware of anything else that might have caused it. Further, various parties testified plaintiff indicated to them that he had been aware of his hearing problem as early as 1980. Id. at 1233. Thus plaintiff's action was time barred by his failure to commence his action within three years after 1986.
Essentially, in the above three cases, the courts gave defendants relief on statute of limitations grounds because the plaintiffs were found to have possessed sufficient critical facts to be aware of an injury and the cause of that injury, but nonetheless failed to investigate their causes of action and commence suit within the three year limitations period. That is not the situation in the instant case.
Granting all favorable inferences to plaintiff here, a rational fact-finder could find that although plaintiff had experienced difficulty hearing and periodic ringing in his ears as early as March 1986, the medical diagnosis of his hearing problem fluctuated over the years, preventing plaintiff from possessing sufficient critical facts to be aware of his injury and its cause. Additionally, a rational fact-finder could find that plaintiff satisfied his affirmative duty to investigate by consulting Dr. Gomez in 1987, and by undergoing further tests at work in 1987, 1989 and 1991.
For instance, in March 1986, although plaintiff experienced trouble hearing and ringing in both ears, right more than left, Dr. Gomez noted that plaintiff had essentially "normal hearing," and treated plaintiff only for a temporal lipoma condition. Likewise, in February 1987 when plaintiff complained of ringing in his ears, although not difficulty hearing, Dr. Gomez reported plaintiff's *553 external canal and tympanic membrane were normal with adequate hearing and treated plaintiff for a viral condition.
In April 1987, the Conrail Health Services otological report reflected that plaintiff reported difficulty hearing and that he had ringing in his ears "due to job."[5] In a follow-up letter, dated January 12, 1988, Conrail Health Services advised plaintiff his hearing in his right ear was satisfactory, but that he may have some difficulty hearing with his left ear.[6]
Two years later, in November 1989, plaintiff again reported auditory problems, noting he had trouble hearing conversations and ringing in his ears, and was examined by Conrail Health Services. This time, however, Conrail Health Services reported to plaintiff by letter dated December 14, 1989, that "both [his] ears [were] satisfactory for hearing and understanding conversation." Conrail physicians further advised plaintiff that "[t]he previous change in [his] left ear [was] no longer present." (emphasis added)
On January 19, 1991, after Conrail Health Services again tested plaintiff's hearing, defendant advised him for the first time that for high-pitched sounds he had "severe hearing loss" in his left ear and "moderate hearing loss" in his right ear and that for "common sounds," the left ear had "a mild hearing loss" and the right ear "a slight hearing loss." The report also noted that plaintiff's past and current test results reflected changes in his hearing, and that there could be "many reasons for a change in hearing, including medication, test problems, exposure to noise while not wearing hearing protection, or ear problems such as wax or infection."
*554 A reasonable fact-finder could conclude that plaintiff did not think he had a work-related hearing problem after receiving Conrail's December 14, 1989 letter. That letter reasonably allowed plaintiff to assume that, whatever "hearing problem" he had, it had not reached a clinically recognizable level that would provide the basis for a claim. The tone of the letter was reassuring: "Your hearing in both ears is satisfactory for hearing and understanding conversation." The letter informed plaintiff that the problem in hearing and understanding identified the year before "is no longer present." Therefore, a reasonable fact-finder could conclude plaintiff was justified in assuming that the condition identified in January 1988 had been resolved and that he had no basis for a FELA claim. Notably, plaintiff testified he believed the letters from Conrail meant "nothing was wrong."
We are satisfied from the foregoing that genuine issues of material fact exist as to (1) whether plaintiff had reason to be aware of his injury and its potential cause as early as March 1986; (2) whether plaintiff satisfied his affirmative duty to investigate by undergoing further testing in 1987, 1989 and 1991; and (3) given the fluctuating medical diagnoses, the specific point in time plaintiff had reason to be aware of his injury and potential cause. See Kestner v. Missouri Pac. R.R. Co., 785 S.W.2d 646, 647 (Mo. App. 1990) (holding there were genuine issues of material fact regarding statute of limitations defense where "[o]ne could reasonably infer plaintiff's [lay] `suspicion' was `laid to rest' after he saw his doctor").
Additionally, a factual issue exists as to whether the December 14, 1989 letter from Conrail advising plaintiff his hearing was satisfactory allayed his suspicions of injury so as to "equitably toll[]" the statute of limitations and "equitably estop[]" defendant from asserting the FELA limitations provision as a defense. Snyder v. Penn Central Transp. Co., 296 Pa.Super. 69, 442 A.2d 300, 302 (1982) (holding defendant employer was equitably estopped from asserting statute of limitations defense in FELA action where employer's doctors misdiagnosed plaintiff's injury). *555 See also Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (holding plaintiff was entitled to trial on issue of whether defendant employer was estopped from asserting statute of limitations as defense where defendant's agents had represented to plaintiff that he had seven years to bring FELA action).
Accordingly, when we review the record in a light most favorable to plaintiff, we cannot conclude plaintiff knew or reasonably should have known he had a work-related injury in March 1986 or February 1987 sufficient to trigger the accrual of a FELA claim. The exact point in time that he should be charged with such knowledge is a factual issue for the fact-finder. Additionally, the question whether defendant was equitably estopped from asserting the statute of limitations as a defense is a question for the fact-finder.
We note that, under New Jersey law, questions of fact as to when a cause of action is deemed to accrue for purposes of applying a statute of limitations are ordinarily resolved by a judge and not a jury. Lopez v. Swyer, 62 N.J. 267, 272, 300 A.2d 563 (1973). However, we observe that, in FELA cases, federal courts submit factual disputes concerning the limitations defense to a jury. See, e.g., Kichline, supra, 800 F.2d at 358 (recognizing jury's role in resolving factual disputes concerning accrual of FELA cause of action); Curry v. Consolidated Rail Corp., 766 F. Supp. 380, 384 (W.D.Pa. 1991) (reversing summary judgment on limitations grounds and remanding issues of fact for resolution by jury). We further observe that the United States Supreme Court has repeatedly held that uniform application of the FELA "throughout the country [is] essential to effectuate its purposes," Dice v. Akron, Canton & Youngstown R.R. Co., 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398, 403 (1951); accord Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 433, 85 S.Ct. 1050, 1057, 13 L.Ed.2d 941, 948 (1965).
Hence, the question arises as to whether, in New Jersey, the judge or the jury should resolve issues of fact pertaining to the *556 availability of the FELA limitations defense. Neither this jurisdiction nor the federal courts have decided whether a state is required to adhere to the federal procedure of submitting factual issues to a jury concerning the FELA limitations provision in light of a state's local rule's requirement that a judge make that determination.[7] Because the parties have not addressed the question either before the trial judge or on appeal, we do not resolve the issue in order that the parties may have the opportunity to address the issue as they see fit. Cf. R. Wilson Plumbing & Heating, Inc. v. Wademan, 246 N.J. Super. 615, 619, 588 A.2d 444 (App.Div. 1991) (holding that trial judge was obliged to permit plaintiff to defend itself before an issue was adjudicated against it, reversing judgment of trial court which raised and resolved issue of consumer fraud sua sponte). Accordingly, we leave to the parties and the court on remand the issue of whether a trial by jury is required to determine the availability of a FELA limitations defense.
Summary judgment is reversed and the matter remanded consistent with this opinion.
NOTES
[1] Plaintiff began working as a trainman and conductor for Lehigh Valley Railroad in 1973. In 1976, Lehigh Valley Railroad was merged into Conrail, and plaintiff continued to work for Conrail thereafter to the present.
[2] Plaintiff does not set forth Dr. West's findings, and the record contains no medical record regarding the examination.
[3] In its brief, defendant asserts that Conrail's letters to plaintiff did "not purport to be a thorough examination or diagnosis of an employee's hearing." Rather, the purpose of the letters was to "identify whether an employee's hearing levels had changed since the last examination in order to monitor `threshold shifts' in an employee's hearing." Defendant asserts that "[s]uch shifts are frequently temporary in nature and are generally attributable to an employee being tested immediately after coming out of a noisy environment." These contentions are not supported by any evidence submitted by defendant as part of the summary judgment motion.
[4] In Aerojet-General, an employee field suit under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901 to 905. There, the employee had experienced breathing difficulties and arthritic pains periodically since 1964 and thought they might be related to his working conditions. 413 F.2d at 795. However, "several doctors expressly rejected [his] layman self-diagnosis and concluded that his problems were not work related." Ibid. "The first diagnosis linking [his] breathing difficulties and arthritis with his working conditions occurred in January 1966," and the employee filed suit shortly thereafter. Ibid. The court held that, under those circumstances, the effects of plaintiff's injury "must manifest themselves to a physician rather than to an unschooled employee before limitations begin to run." Id. at 796.
[5] The report does not state whether plaintiff thought his difficulty hearing was due to his job. See Monaghan v. Union Pac. R.R. Co., 242 Neb. 720, 496 N.W.2d 895, 902 (1993) (distinguishing between tinnitus and difficulty hearing and recognizing medical testimony that there is "no cause-and-effect relationship between the conditions").
[6] This report contradicts the information plaintiff received from Dr. Gomez in 1986 when Dr. Gomez indicated plaintiff noted more of a problem in his right ear than his left.
[7] Cases which may be relevant to a determination of this issue follow: See Dice, supra, 342 U.S. at 363, 72 S.Ct. at 315, 96 L.Ed. at 404 (reversing Ohio court's application of its state procedural rule which permitted a judge rather than a jury to resolve factual questions concerning the railroad's defense of "release" where plaintiff alleged the release had been fraudulently obtained, and holding that "the right to trial by jury is too substantial a part of the rights accorded by the [FELA] to permit it to be classified as a mere `local rule of procedure' for denial in the manner that Ohio has here used"); Bailey v. Central Vermont R.R. Inc., 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444, 1447; (holding that the right to trial by jury is a fundamental feature of the federal system of jurisprudence and "part and parcel of the remedy afforded railroad workers under the [FELA]"); Beneficial Finance Co. v. Swaggerty, 86 N.J. 602, 607-08, 432 A.2d 512 (1981) (in an action arising under a federal statute, interpreting Burnett and Dice to require state courts to construe a statute of limitations defense in light of the limitations period contained in the federal statute and in light of "the surrounding constellation of federal common law"); La Bonte v. New York, New Haven and Hartford R.R. Co., 341 Mass. 127, 167 N.E.2d 629, 632 (1960) (holding that the issue of whether a party is estopped from asserting a statute of limitations defense in a FELA action is controlled by federal law).